# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                    |   |                                  |
|------------------------------------|---|----------------------------------|
| CAUSE OF ACTION INSTITUTE,         | ) |                                  |
| Plaintiff,                         | ) |                                  |
| v.                                 | ) | Civil Action No. 16-2226 (RBW)   |
| U.S. DEPARTMENT OF JUSTICE,        | ) |                                  |
| Defendant.                         | ) |                                  |

## MEMORANDUM OPINION

The plaintiff, Cause of Action Institute (the "Institute"), brings this civil action against the defendant, the United States Department of Justice (the "Department"), alleging that the Department violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by improperly withholding records responsive to its FOIA request. See Complaint ("Compl.") ¶ 1. Currently pending before the Court are the Department of Justice's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 12, the Cause of Action Institute's Response to Department of Justice's Motion for Summary Judg[]ment and Cross-Motion for Summary Judgment ("Pl.'s Summ. J. Mot."), ECF No. 13, and the Cause of Action Institute's Motion for Leave to Amend Its Complaint ("Pl.'s Mot."), ECF No. 19. Upon careful consideration of the parties' submissions,[1] the Court concludes for the reasons set forth below that it must deny the Institute's motion to amend its Complaint, grant the Department's motion for summary judgment, and deny

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Department's Statement of Undisputed Material Facts ("Def.'s Facts"); (2) the Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts"); (3) the Plaintiff's Response to Defendant Department of Justice's Statement of Undisputed Material Facts ("Pl.'s Resp."); (4) The Department of Justice's Reply on Motion for Summary Judgment and Opposition to COA's Cross-Motion for Summary Judgment ("Def.'s Reply"); (5) the Cause of Action Institute's Reply in Support of Its Cross-Motion for Summary Judgment ("Pl.'s Summ. J. Reply"); (6) The Department of Justice's Opposition to Plaintiff's Motion to Amend Complaint ("Def.'s Opp'n"); and (7) the Cause of Action Institute's Reply in Support of Its Motion for Leave to Amend Its Complaint ("Pl.'s Reply").

the Institute's cross-motion for summary judgment.

## I. BACKGROUND

On July 15, 2016, the Institute sent a FOIA request by letter to the Department's Tax Division (the "Division"), "seeking production of two specific records relating to the detailing of [Department] attorneys to the White House." Compl. ¶ 6. First, the Institute sought "an email chain involving two government employees (the 'Bringer-Wolfinger email chain') . . . [that was submitted in] May 2014." Id. ¶ 9. Second, the Institute sought "a November 2011 report entitled the Current Practices for Attorney Assignments, Transfers, and Details" to the White House. Pl.'s Facts ¶ 4; Def.'s Facts ¶¶ 3–4. The Division had previously produced these two specific records "in response to another . . . FOIA request" made by the Institute. Pl.'s Facts ¶ 2. However, the Division "had withheld large portions of those records by applying 'NR' or 'Non-Responsive' labels to the redactions." Id.; see also Compl. ¶ 7. Thus, in its July 15, 2016 FOIA request, the Institute sought the two requested records in their entirety, without any non-responsive redactions. See Compl. ¶ 8.

"By letter [] dated August 9, 2016, [the Division] acknowledged receipt of the [Institute's] July 15, 2016 FOIA request . . . and requested a conference to clarify the scope of the request." Id. ¶ 11. On August 15, 2016, the parties "held a [tele]phone conference," during which the Institute explained that the use of "non-responsive" as a label to redact information was an improper "withholding tool" and clarified that it sought only the two records in their entirety. Id. ¶ 12; see also Def.'s Facts ¶¶ 2–6. On September 20, 2016, the Division issued its final decision regarding the Institute's July 15, 2016 FOIA request as clarified, producing in its entirety the November 2011 report, without any redactions. See Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7.[2]

---

[2] The Institute does not challenge the Department's "processing of this record," and this "record is not part of the instant litigation." Pl.'s Facts ¶ 7.

2

However, the Division subdivided the Bringer-Wolfinger email chain into nine separate records and redacted "Record 7" on the basis of Exemptions 3 and 5 of the FOIA and the remaining records as non-responsive. Pl.'s Facts ¶ 8; Compl. ¶ 17.

The Institute initiated this action by filing its Complaint on November 8, 2016, see Compl. at 1, alleging that the Department "improperly segmented the Bringer-Wolfinger email chain into nine distinct 'records' and improperly applied a 'non-responsive' designation to withhold eight of those 'records,'" id. ¶ 30.[3] Thereafter, on January 12, 2017, the Department updated its policy regarding what constitutes a "record" under the FOIA, in which it urged agencies to "use the definition of [the term] record found in the Privacy Act," meaning that "each 'item, collection, or grouping of information' on the topic of the request can be considered a distinct 'record.'" Pl.'s Mot. to Amend, Exhibit ("Ex.") J (OIP Guidance: Defining a "Record" Under the FOIA (the "Guidance")) at 3. Later, on January 18, 2017, the Division re-processed the Bringer-Wolfinger email chain and re-produced the record to the Institute "as a single record," withdrawing all of the "non-responsive" redactions, but "redact[ing] significant portions of responsive material" pursuant to FOIA exemptions 3, 5, 6, 7(A), and 7(C). Pl.'s Facts ¶ 11; see also Def.'s Facts ¶¶ 9–11.

The Department now moves for summary judgment, asserting that its redactions of the re-processed and re-produced Bringer-Wolfinger email chain were proper, as those contents were exempt from disclosure under several FOIA exemptions. See Def.'s Mot. at 3. And, given that the Department re-produced the Bringer-Wolfinger email chain as one record, and because the Department asserts that withholding portions of the Bringer-Wolfinger email chain is proper

---

[3] Prior to filing this lawsuit, the Institute filed an administrative appeal with the Department's Office of Information Policy (the "Office"), challenging the Department's withholdings of the Bringer-Wolfinger email chain. See Pl.'s Facts ¶ 9. Although the Office acknowledged receipt of the Institute's appeal, it never ruled on the appeal. See id. ¶ 10.

3

pursuant to specific FOIA exemptions and not because they are "non-responsive," the Department contends that the issue of "whether the email chain constitutes one record or several records" is now "moot." Def.'s Mot. at 15. On February 8, 2017, the Institute simultaneously opposed the Department's motion and cross-moved for summary judgment, see Pl.'s Summ. J. Mot. at 1, arguing that "its claim against the [Department] for using 'non-responsive' as a redaction tool and improperly segmenting one record into multiple records is not moot," id. at 18. The Institute, however, did not oppose the Department's motion "as to its application of exemptions and redactions in the January 18, 2017 production" of the re-processed Bringer-Wolfinger email chain. Id. at 8. In response, the Department maintains its position that this case is now moot, see Def.'s Reply at 1, and argues that the Institute now effectively seeks a broad "sweeping [advisory] decision" on the definition of a "record" as used in the Department's Guidance predicated on "new and wholly unsupported allegations regarding the [Department's] recordkeeping practices," id. at 2; see also id. ("These allegations were not contained in the Complaint—let alone alleged with particularly, as required for a FOIA [policy-or-]practice claim.").

On March 24, 2017, "to resolve any dispute or ambiguity about whether [the] Institute[] . . . has [ ] properly pled [an explicit policy-or-practice claim], [the] Institute move[d] the Court for leave to allow it to amend its complaint." Pl.'s Mot. at 3. The Department opposed the Institute's motion, arguing that the Institute "seeks to change, at this final stage of the proceedings, the fundamental nature and scope of the action." Def.'s Opp'n at 1.

## II. STANDARDS OF REVIEW

### A. Motion for Leave to File a Supplemental Pleading

Under Rule 15(d) of the Federal Rules of Civil Procedure, a "court may, on just terms,

4

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).[4] Rule 15(d) aims "to make pleadings a means to achieve an orderly and fair administration of justice." Gomez v. Wilson, 477 F.2d 411, 417 n.34 (D.C. Cir. 1973) (quoting Griffin v. Cty. Sch. Bd., 377 U.S. 218, 227 (1964)). Therefore, although the decision to grant a motion for leave to file a supplemental pleading is "within the discretion of the district court," Xingru Lin v. District of Columbia, 319 F.R.D. 1, 1 (D.D.C. 2016) (quoting Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008)), such motions should be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action," Hall v. Cent. Intelligence Agency, 437 F.3d 94, 101 (D.C. Cir. 2006) (quoting 6A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 1504 (2d ed. 1990)).

**B.     Motions for Summary Judgment**

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433

---

[4] The parties disagree as to which provision of Rule 15 governs the Institute's motion to amend its complaint. Compare Pl.'s Mot. at 3 (asserting that Rule 15(a)(2)'s as "justice so requires" is the applicable legal standard), with Def.'s Opp'n at 2 (contending that the "less-permissive Rule 15(d)" is the relevant legal standard). Because the Institute seeks to plead additional allegations giving rise to a new cause of action challenging a Department policy that was issued two months after the Institute initiated this action, see Pl.'s Mot. to Amend, Ex. 2 (Proposed Amended Complaint) ¶¶ 49–55, the Court construes the Institute's motion as a request to file a supplemental pleading, see Fed. R. Civ. P. 15(d) (governing "supplemental pleading[s] setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"). In any event, the difference between motions filed under Rule 15(a) and those filed pursuant to Rule 15(d) is a matter of semantics, see United States v. Hicks, 283 F.3d 380, 385 (D.C. Cir. 2002) (noting that the "distinction [between motions filed pursuant to the two Rules] is in most instances of little moment"), as "[m]otions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard," Xingru Lin v. District of Columbia, 319 F.R.D. 1, 1 (D.D.C. 2016) (alteration in original) (quoting Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008)).

F.3d 889, 895 (D.C. Cir. 2006). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248). Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)). If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, at bottom, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. Fed. Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

FOIA cases "typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001). In a FOIA action, the defendant agency has the "burden of demonstrating that the withheld documents [requested] are exempt from disclosure." Boyd v. Criminal Div. of U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its

obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III. ANALYSIS

### A. The Institute's Motion for Leave to File a Supplemental Complaint

The Institute contends that in order "to accommodate the [Department's] position that any claim implicating its FOIA policy must be expressly pleaded in the Complaint and to remove any doubt that the Court may address all issues in this dispute," Pl.'s Reply at 2, it should be permitted to supplement its Complaint to "add an explicit policy-or-practice claim based on the [Department's] recently formalized and published . . . [G]uidance," Pl.'s Mot. at 6. "[A] supplemental pleading may include a new 'cause of action' when it would be convenient to litigate all the claims between the parties in the same action." Wright & Miller, Federal Practice and Procedure § 1506 (3d ed. 2017) (footnote omitted). However, a supplemental pleading may assert a "cause[] of action not alleged in the original complaint so long as [its] introduction does not create surprise or prejudice the rights of the adverse party." Aftergood v. Cent. Intelligence Agency, 225 F. Supp. 2d 27, 30 (D.D.C. 2002). The Department argues that the Institute's motion to supplement its Complaint to assert a new cause of action "constitutes undue surprise

and prejudices [its] interest in resolving the present . . . [FOIA] records-denial case." Def.'s Opp'n at 1. The Court will address in turn the Department's arguments regarding undue surprise and prejudice.

### 1. The Department's Undue Surprise Argument

The Department argues that the Institute's "attempt to drastically change the subject matter and nature of this case amounts to undue surprise" because the Institute's "proposed new claim would transform th[is] case into a wide-ranging pattern-and-practice claim that could affect the [Department's] response to virtually every FOIA request it receives." Id. at 3; see also id. (asserting that "[t]he original claim in this case was a garden-variety FOIA suit seeking access to a single chain of emails"). The Court disagrees.

The Court acknowledges that what constitutes undue surprise for purposes of resolving motions for leave to file a supplemental complaint alleging a new cause of action has not been specifically defined in this Circuit. But, courts in this jurisdiction have granted such motions where defendants could not demonstrate surprise because they were aware of the issue or allegations sought to be added. See Bloche v. Dep't of Def., et. al, No. 07-2050 (HHK/JMF), 2009 WL 1330388, at *2 (D.D.C. May 13, 2009) (concluding that "supplementation of the complaint would not create any undue surprise for [the] defendants," presumably because the defendants were aware of the facts sought to be added to the plaintiffs' complaint when the request to supplement was made (i.e., that the defendants had yet to respond to their FOIA request when supplementation was requested)); see also Aftergood, 225 F. Supp. 2d at 31 (finding that the defendant "[wa]s already familiar with the" plaintiff's newly asserted claims in his second FOIA request, because that FOIA request was "substantially identical" to the plaintiff's first FOIA request, and therefore, the defendant was not surprised by the claim). Here,

and prejudices [its] interest in resolving the present . . . [FOIA] records-denial case." Def.'s Opp'n at 1. The Court will address in turn the Department's arguments regarding undue surprise and prejudice.

### 1. The Department's Undue Surprise Argument

The Department argues that the Institute's "attempt to drastically change the subject matter and nature of this case amounts to undue surprise" because the Institute's "proposed new claim would transform th[is] case into a wide-ranging pattern-and-practice claim that could affect the [Department's] response to virtually every FOIA request it receives." Id. at 3; see also id. (asserting that "[t]he original claim in this case was a garden-variety FOIA suit seeking access to a single chain of emails"). The Court disagrees.

The Court acknowledges that what constitutes undue surprise for purposes of resolving motions for leave to file a supplemental complaint alleging a new cause of action has not been specifically defined in this Circuit. But, courts in this jurisdiction have granted such motions where defendants could not demonstrate surprise because they were aware of the issue or allegations sought to be added. See Bloche v. Dep't of Def., et. al, No. 07-2050 (HHK/JMF), 2009 WL 1330388, at *2 (D.D.C. May 13, 2009) (concluding that "supplementation of the complaint would not create any undue surprise for [the] defendants," presumably because the defendants were aware of the facts sought to be added to the plaintiffs' complaint when the request to supplement was made (i.e., that the defendants had yet to respond to their FOIA request when supplementation was requested)); see also Aftergood, 225 F. Supp. 2d at 31 (finding that the defendant "[wa]s already familiar with the" plaintiff's newly asserted claims in his second FOIA request, because that FOIA request was "substantially identical" to the plaintiff's first FOIA request, and therefore, the defendant was not surprised by the claim). Here,

as the Institute correctly notes, the Department "cannot credibly claim unfair surprise," as the Department, in its opposition to the Institute's cross-motion, "characterized [the] Institute's response to its mootness arguments as implicating a policy-or-practice claim," demonstrating a "recognition and awareness of a [potential] policy-or-practice claim" prior to the Institute's efforts to supplement its Complaint to include this claim. Pl.'s Reply at 5. Accordingly, the Court is not convinced that the Department is unduly surprised by the new claim.

### 2. The Department's Undue Prejudice Argument

The Department contends that granting the Institute's motion would cause it undue prejudice "because the supplemental claim would force the parties back to the beginning of litigation and through another round of dispositive motion briefing—all in a case where [the Institute] ha[s] conceded that [the Department's] bases for [its] withholding were proper." Def.'s Opp'n at 3; see also id. ("Courts in this district have held that where resolution of the original claim is close at hand, a new supplemental claim that would delay final resolution of the case constitutes prejudice to the defendant."). Additionally, the Department argues that the Institute unduly delayed seeking to supplement its complaint, as the Institute "knew about the [Department's] [G]uidance before filing its [cross-]motion for summary judgment, and in fact it cites the . . . [G]uidance in that motion." Id.

"Delay and prejudice are precisely the matters to be addressed in considering whether to grant motions for supplemental pleadings." Hall, 437 F.3d at 101. "To demonstrate 'prejudice sufficient to justify a denial of leave to [supplement,] the opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [supplement] been timely.'" Butler v. White, 67 F. Supp. 3d 59, 67–68 (D.D.C. 2014) (quoting In re Vitamins Antitrust Litig., 217 F.R.D. 30, 32 (D.D.C. 2003)). The

9

prejudice alleged "must in fact be 'undue,'" Dove v. Wash. Metro. Area Transit Auth., 221 F.R.D. 246, 248 (D.D.C. 2004) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)), which is more than "mere harm to the non-movant," id.; see also id. ("Examples of such prejudice include situations where the opposed [supplement] will alter either the choice of counsel or the nature of the opposing party's strategy."). In determining whether "the threat of prejudice to the opposing party is 'undue,' courts should consider 'the hardship to the moving party if leave to [supplement] is denied.'" United States v. Honeywell Int'l, Inc., 318 F.R.D. 202, 206 (D.D.C. 2016) (citation omitted). Here, the Court finds that permitting the Institute to supplement its Complaint at this stage of the litigation would unduly prejudice the Department.

As support for its position that it did not unduly delay its request to supplement its Complaint to add a policy-or-practice claim against the Department, the Institute explains that the Department's Guidance, which it now seeks to challenge, "was published only a week before the [Department] filed its summary judgment motion and reproduced the [Bringer-Wolfinger email chain] without the offending segmentation." Pl.'s Reply at 5 (noting that "[a]t the first opportunity . . . [it] argued in its cross-motion for summary judgment that the [Department's G]uidance . . . and its FOIA policy defeat the [Department's] claim that the case is moot"). However, as the Institute acknowledges, it "sought leave to [supplement] its Complaint only after the [Department's legal arguments as to why this case is now moot] bec[a]me fully apparent in [the Department's] opposition to [the Institute's] cross-motion for summary judgment." Id. Consequently, despite the Institute's claim as to when it understood the Department's position, its motion to supplement the Complaint "appears to be nothing more than an effort to avoid an adverse summary judgment ruling," Local 472 v. Ga. Power Co., 684 F.2d 721, 724–25 (11th Cir. 1982), and such legal maneuvering has been rejected by other members

10

of this Court, see, e.g., Hoffmann v. United States, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) ("[I]t is fairly well established that '[d]enying leave to [supplement] is particularly appropriate when a lawsuit is on the verge of final resolution.' A plaintiff, quite simply, cannot be permitted to 'circumvent the effects of summary judgment by [supplementing] the complaint every time a termination of the action threatens.'" (second alteration in original) (citations omitted)).

Furthermore, granting the Institute's motion to supplement "would permit [the Institute] to transform [its] case into something entirely new." Miss. Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. 542, 544 (D.D.C. 1991). Generally,

> in FOIA cases, leave to [supplement] has been granted so that further requests for documents could be added. Where, however, the complaint, [if supplemented as proposed], would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to [supplement] should be denied.

Id. (citations omitted) (noting that the Supreme Court's concern in Foman "was that leave to [supplement] should be granted liberally in order to ensure that litigants have their day in court," but was not intended to provide litigants a tool to preclude "the sun [from] set[ting] on their[] or any case"). The Institute asserts that "the proposed policy-or-practice claim relates to the same FOIA request presented in the original Complaint, concerns the [Department's] conduct with regard to that same FOIA request, and would allow the Court to reach the merits of the parties' dispute." Pl.'s Reply at 3. While it may be true that the Institute's proposed policy-or-practice claim relates to the same FOIA request, it does so only tangentially, as the Institute's Complaint is entirely predicated on the improper withholding of responsive records through the designation of those records as "non-responsive." See generally Compl. (focusing on the Department's redactions of information in the Bringer-Wolfinger email chain). In fact, the Institute, in its Complaint, alleges only that the Bringer-Wolfinger email chain "constitute[d] a single record,"

11

id. ¶ 29, and that the Division "improperly segmented the Bringer-Wolfinger email chain into nine distinct 'records,'" id. ¶ 30 (asserting that the Department "improperly applied a 'non-responsive' designation" to segment and withhold portions of the Bringer-Wolfinger email chain). However, the Institute never asserted that the Department's action was pursuant to an improper policy or practice that violates the FOIA, see generally id. (failing to assert any allegations regarding the Department's record keeping practices or FOIA policy concerning what constitutes a "record" under the FOIA). And, as the Court already noted, the Division ultimately re-produced the Bringer-Wolfinger email chain "as a single record," and withdrew all of the "non-responsive" redactions. Pl.'s Facts ¶ 11; see also Def.'s Facts ¶¶ 9–11. Thus, permitting the Institute to supplement its Complaint at this time to allege a new cause of action would "fundamentally reshape the landscape of [this] litigation," Bode & Grenier, LLP v. Knight, 808 F.3d 852, 860 (D.C. Cir. 2015), and result in more than "the garden-variety prejudice that attends a party sharpening the allegations of the complaint," Honeywell Int'l, Inc., 318 F.R.D. at 207.

By contrast, the prejudice the Institute may suffer from a denial of its motion for leave to supplement its Complaint does not outweigh the prejudice the Department will incur if the Court grants the Institute's motion. The Institute asserts that, if the Court denies leave to file its supplement, "it w[ill] have to wait until a future, as-of-yet unfiled and unidentified request is ripe for judicial review to challenge [the Department's] actions, and then only if the [Department] acts in the same manner as it did here (i.e., improperly segmenting a responsive record into multiple records)." Pl.'s Reply at 4; see also id. ("[T]he [Department] is now aware that [the] Institute is attempting to challenge the agency's unlawful FOIA policy, [and the Department] may attempt to respond to any future . . . Institute [FOIA] request in such a way as to prevent judicial review while also implementing its unlawful FOIA policy against other requesters.").

12

Despite the inconvenience the Institute argues it will experience from not being able to assert its wholly new cause of action against the Department in this litigation, this is not the type of inconvenience that implicates the principles of fairness and judicial economy that justify application of the standard that leave to file a supplemental pleading should "be liberally granted." See Abdullah v. Washington, 530 F. Supp. 2d 112, 115 (D.D.C. 2008). This form of inconvenience is not something uncommon to federal litigation, as federal courts are limited to considering matters that present a currently existing case or controversy. U.S. Const. art. III § 2; see also Already, LLC v. Nike, Inc., 568 U.S. 85, 90–91 (2013) ("We have repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." (citations omitted)). This is because without a live case or controversy, federal courts would essentially be tasked with rending advisory opinions, which they are prohibited from doing. See Public Serv. Elec. & Gas Co. v. FERC, 783 F.3d 1270, 1274 (D.C. Cir. 2015) ("The oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions. To satisfy the firmly established Article III case or controversy requirement, there must be a live controversy at the time we review the case." (citations and internal quotation marks omitted)). In any event, the Institute remains "free to raise [its policy-or-practice] claim[] in separate litigation," if and when circumstances warrant such action. City of Jersey City v. Consol. Rail Corp., 968 F. Supp. 2d 302, 307 (D.D.C. 2013).

In sum, the Court finds that granting the Institute leave to supplement its Complaint would unduly prejudice the Department by expanding this litigation from a simple FOIA claim for the production of responsive documents into a more complex case with an additional policy-or-practice FOIA claim, particularly when this litigation is on the verge of final resolution. Accordingly, the Court must deny the Institute's motion for leave to supplement its

Complaint.

**B. The Parties' Cross-Motions for Summary Judgment**

As previously noted, the parties do not dispute the Division's withholding of the Bringer-Wolfinger email chain based on FOIA exemptions 3, 5, 6, 7(A), and 7(C). See Pl.'s Summ. J. Mot. at 8 (noting that it "does not oppose the [Department's] Motion for Summary Judgment as to its application of exemptions and redactions in the January 18, 2017 production" of the reprocessed email chain).[5] However, the parties dispute whether the Institute's claim is now moot. See Pl.'s Summ. J. Mot. at 9–18; Def.'s Reply at 2–6.

The Department contends that this case is now moot given that it has released to the Institute all of the records that the Institute sought through its FOIA request. See Def.'s Reply at 2 ("Because [the Institute] sought disclosure of specific materials, and obtained those materials, the case is moot."). "Article III's limitation of federal-court jurisdiction to cases and controversies requires that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed.'" Bayala v. U.S. Dep't of Homeland Sec., Office of Gen. Counsel, 827 F.3d 31, 34 (D.C. Cir. 2016) (alteration in original) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013)). Thus, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. (alteration in original) (quoting Genesis Healthcare Corp., 569 U.S. at 72). The party seeking dismissal has the burden of establishing mootness, and its burden is a "heavy" one. Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d 568, 576 (D.C. Cir. 2010).

---

[5] The parties also do not dispute the adequacy of the Division's search for the requested records or the segregability of the reproduced Bringer-Wolfinger email chain. See generally Def.'s Mot.; Pl.'s Summ. J. Mot.

Applying this standard to FOIA claims, "once all the documents are released to the requesting party, there no longer is a case or controversy." Bayala, 827 F.3d at 34; see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."). This is so "[b]ecause the [FOIA] only authorizes a court 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" Harvey v. Lynch, 123 F. Supp. 3d 3, 7 (D.D.C. 2015) (quoting 5 U.S.C. § 552(a)(4)(B)). Therefore, "[o]nce the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." Perry, 684 F.2d at 125 (alteration in original) (quoting Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980)).

Here, the Institute concedes that the Department has produced all the records it sought and in the format it requested (i.e., without the offending redactions or segmentation based on those redactions). See Pl.'s Summ. J. Mot. at 8. More importantly, the Institute does not object to the redactions and withholdings made by the Department pursuant to various FOIA exemptions. See id. Consequently, "there is nothing of the underlying FOIA dispute left for the Court to adjudicate." Harvey, 123 F. Supp. 3d at 7.

Despite the Institute's concession that is has now received from the Department all of the documents it requested and is entitled to receive under the FOIA, the Institute argues that this case is not moot because two exceptions to the mootness doctrine apply. See Pl.'s Summ. J. Mot. at 9. Specifically, the Institute argues that the "voluntary cessation of the challenged behavior" and the "repetition yet evading review" exceptions permit this Court to retain jurisdiction of this case. See id. However, the Institute's reliance on these two exceptions is to

15

no avail.

Under the voluntary cessation doctrine, "[a] case will not be moot . . . where a defendant has voluntarily stopped the [challenged behavior], but may 'return to [its] old ways.'" Citizens for Responsibility & Ethics in Wash. v. U.S. Sec. Exch. Comm'n, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (third alteration in original) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). And, "[a] party's voluntary cessation will be found to moot a case where: '(1) there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Id. (second alteration in original) (quoting Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008)). The Institute asserts that in this case, "although the [Department] is no longer attempting to segment the email chain into multiple records as a basis for redacting information, [the Department] does not explicitly concede that the email chain is one record." Pl.'s Summ. J. Mot. at 11 (citations omitted). Therefore, according to the Institute, "[a]bsent a court decision that the [Department's] use of 'non-responsive' redactions and treatment of one record as many records is improper, the 'dispute over the legality of the challenged practices' and the 'public interest in having the legality of the practices settled' will remain unresolved." Id. (quoting W.T. Grant Co., 345 U.S. at 632). In addition, the Institute contends that the "Court should not presume that the [Department] will refrain from returning to its old ways" because the Department's Guidance, issued this year, "if implemented as written, will ensure the continuation of the same offending behavior challenged in this litigation." Id. at 12.

The Court finds that the Institute's position that the Department's voluntary cessation of its challenged conduct does not moot this case is fundamentally flawed. Primarily, as the Department correctly notes, the Institute has not pleaded in its Complaint allegations of "any

pattern or practice by the [Department] with respect to FOIA responses." Def.'s Reply at 4. Rather, the Institute sought only the disclosure of the Bringer-Wolfinger email chain. See Compl. at 7; see also Cause of Action Inst. v. Eggleston, 224 F. Supp. 3d 63, 71 (D.D.C. 2016) ("To state a claim for relief under the 'policy or practice' doctrine articulated in Payne[ Enters., Inc. v. United States, 837 F.2d 486 (D.C. Cir. 1988)] . . . a plaintiff must allege, inter alia, facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" (quoting Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013))). Furthermore, each of the cases the Institute cites to demonstrate the applicability of the voluntary cessation of the challenged behavior doctrine all involved plaintiffs who expressly challenged an agency policy or practice as a cause of action pleaded in their complaints. See Pl.'s Summ. J. Mot. at 10–13 (citing cases where courts did not find the plaintiffs' claims moot after the production of the requested documents because they also explicitly challenged the agency's FOIA policy or practice). Therefore, because the Institute has not challenged a Department's FOIA policy or practice in regards to segmenting e-mail chains into multiple records in its Complaint, the Court is not convinced that the voluntary cessation of the challenged behavior exception applies in this case.

Regarding the capable of repetition yet evading review exception, a case is "not moot if '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" Ctr. for Study of Servs. v. U.S. Dep't of Health & Human Servs., 130 F. Supp. 3d 1, 8 (D.D.C. 2015) (alterations in original) (quoting McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin., 102 F. Supp. 2d 21, 23 (D.D.C. 2000)). The Institute argues that both of these requirements are satisfied in this case because it "has not been

17

afforded an opportunity to fully litigate its claim," Pl.'s Summ. J. Mot. at 15, and "because [it] is a frequent FOIA requester and litigator, has more than twenty FOIA requests currently pending at the [Department], and the [Department] has not recanted the disputed legal position but instead has issued [the G]uidance reaffirming its position that the challenged behavior is acceptable," id. at 16.

The Court finds that the capable of repetition yet evading review exception does not provide support for the Institute's position for several reasons. Primarily, as the parties acknowledge, it is unclear whether the capable of repetition yet evading review doctrine applies to FOIA disclosures, given the general duration of the proceedings involved in such litigation. See Def.'s Reply at 5 (arguing that "[t]he 'capable of repetition, yet evading review' doctrine does not apply to FOIA disclosures" (quoting McDonnell Douglas Corp., 102 F. Supp. 2d at 23)); Pl.'s Summ. J. Mot. at 15 (arguing that McDonnell Douglas Corp. is distinguishable from the facts in this case).[6] But, even if this exception was applicable, the Institute's claim in this case, as previously noted, was the improper withholding of the Bringer-Wolfinger email chain, not a challenge to any of the Department's established FOIA policies or practices. See generally Compl. Considering that the Department has now disclosed the Bringer-Wolfinger email chain to the Institute's satisfaction, it cannot conceivably be said that this challenged action was "too short to be fully litigated," Ctr. for Study of Servs., 130 F. Supp. 3d at 8, as the Institute made its FOIA request well over a year ago, see Compl. ¶ 6, or that the Department is capable of repeating the same harm (i.e., improperly withholding the Bringer-Wolfinger email chain). And,

---

[6] In holding that this mootness exception does not apply to FOIA disclosures, the McDonnell Douglas court relied on Gulf Oil Corp. v. Brock, 778 F.2d 834, 839 (D.C. Cir. 1985). See 102 F. Supp. 2d at 23. However, in Gulf Oil Corp, the Circuit stated that "[t]he prolonged proceedings of this case are testimony that the first requirement under the 'capable of repetition, yet evading review' exception is not met with regard to FOIA disclosures." 778 F.2d at 839 (noting in that reverse FOIA action, that eleven years had elapsed between when an organization made a request from the United States Department of Labor for disclosure of the plaintiff's 1973 affirmative action plan and when that organization withdrew its request, and that the plaintiff's 1973 affirmative action plan had not in fact yet been disclosed).

the purported policy or practice which the Institute now desires to challenge (i.e., the Department's Guidance) "is [not] likely to evade review," as the Institute remains free to challenge the Department's Guidance in subsequent litigation if there is a factual basis to challenge the Guidance and the challenge is properly pleaded.

In sum, the Institute concedes that it has received the Bringer-Wolfinger email chain in the format requested, the disclosure of which was the subject of its FOIA request and the underlying basis for its Complaint, and it does not oppose the redactions the Division applied to the Bringer-Wolfinger email chain pursuant to several FOIA exemptions. See generally Pl.'s Summ. J. Mot. Consequently, because the Institute has obtained the relief that it sought, the Institute's case is now moot. See Hall, 437 F.3d at 99. Accordingly, the Court must grant the Department's motion for summary judgment and deny the Institute's cross-motion for summary judgment.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the Department's motion for summary judgment, deny the Institute's cross-motion for summary judgment, and deny the Institute's motion for leave to file a supplemental complaint.[8]

---

[7] The Institute also asserts that, because this case is not moot, it is entitled to summary judgment and a finding by the Court "that the [Department] violated the FOIA by redacting information as non-responsive and improperly segmenting one record into multiple records." Pl.'s Summ. J. Mot. at 18; see generally Pl.'s Summ. J. Reply. Having concluded that this case is moot, the Court need not address this argument by the Institute, as "[t]he rule against deciding moot cases forbids federal courts from rendering advisory opinions or 'decid[ing] questions that cannot affect the rights of litigants in the case before them.'" Hall, 437 F.3d at 99 (alteration in original) (citation omitted).

[8] In its cross-motion, the Institute states that "upon completion of summary judgment proceedings, [it] intends to move for attorney[s'] fees and costs." Pl.'s Summ. J. Mot. at 9. The Court notes that this memorandum opinion does not determine whether the Institute was a prevailing party for purposes of determining whether the Institute is eligible for an award of attorneys' fees and costs. Additionally, the Court's conclusion that this case is moot does not prevent the Institute from filing a motion seeking attorneys' fees and costs. See Harvey, 123 F. Supp. 3d at 8–9 (holding that, even though the plaintiff's case was moot, the plaintiff may still seek reasonable attorneys' fees and costs for bringing the action to the extent he is a prevailing party).

**SO ORDERED** this 10th day of October, 2017.[9]

REGGIE B. WALTON<br>United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.